

COPY

## IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
## FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

JOHNNIE JOY,

    Plaintiff,

VS.

       No. CT-003415-11
       Div. VII
       JURY DEMANDED

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant.

*FILED JUL 22 2011 CIRCUIT COURT CLERK BY D.C.*

*I, JIMMY MOORE, Clerk of the Circuit Court, Shelby County Tennessee certify this to be a true and accurate copy as filed this July 22, 2011. JIMMY MOORE, Clerk By D.C.*

### COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Johnnie Joy, by and through her legal counsel of record, Kevin A. Snider of Snider & Horner, PLLC, and files her Complaint for Damages, which states to this Honorable Court as follows:

### JURISDICTION AND VENUE

1. The Plaintiff, Johnnie Joy (hereinafter individually referred to as "the Plaintiff"), is an adult resident and citizen of Shelby County, Tennessee.

2. The Defendant, Metropolitan Life Insurance Company (hereinafter referred to as "the Defendant"), is a foreign for-profit corporation that exists pursuant to the laws of the State of Tennessee, is conducting business in Shelby County, Tennessee, and may be served with process on its registered agent, the Insurance Commissioner with the Tennessee Department of Commerce and Insurance, which is located at 500 James Robertson Parkway, Nashville, Tennessee 37243.



3.   Jurisdiction and Venue in the instant case are properly found in Shelby County, Tennessee, pursuant to T.C.A. § 20-4-101 and related sections.

## FACTUAL ALLEGATIONS

4.   On or about January 28, 1985, the Plaintiff's spouse, Morris Larry Joy, Jr. (hereinafter referred to as "Mr. Joy"), and the Defendant entered into a contract for life insurance, Policy No. 85416806UL (hereinafter referred to as "the Life Insurance Policy"), which was effective from January 28, 1985 until January 28, 2046 when said Mr. Joy as the insured or owner of the Life Insurance Policy was expected to reach the age of ninety-five (95) years.  Said Life Insurance Policy was to provide life insurance coverage in the amount of $200,000.00 to the Plaintiff upon the death of her husband Mr. Joy.  The Life Insurance Policy is attached hereto as "Exhibit A".

5.   Then, on or about March 8, 2011, Mr. Joy passed away.  The Plaintiff's Individual Life Death Claim Form is attached hereto as "Exhibit B".

6.   In response to the Plaintiff's application for life insurance benefits, the Defendant informed said Plaintiff that, unbeknownst to her, Mr. Joy's payment of premiums ceased prior to his death and the cash value of the Life Insurance Policy was less than the policy monthly deduction scheduled for December 28, 2010.  However, the Defendant further represented to the Plaintiff that if she were to remit a payment to the Defendant's Remittance Service Center, her insurance protection would not lapse and would be fully reinstated.  The Defendant's Notification of Pending Lapse is attached hereto as "Exhibit C".

7. In reliance on the above, the Plaintiff complied by sending the Defendant a check in the amount of $252.47, the receipt of which the Defendant acknowledged on or about April 1, 2011. The Defendant's April 1, 2011 correspondence is attached hereto as "Exhibit D".

8. The Defendant, however, replied that the Plaintiff was required to complete an Application for Reinstatement to be received by said Defendant by April 22, 2011. Otherwise, the Defendant would close the parties' file and refund any remittance that was intended for reinstatement. The Plaintiff timely complied with this request and the Plaintiff's Application for Reinstatement and certified mail receipt are collectively attached hereto as "Exhibit E".

9. Then, on or about April 18, 2011, the Defendant sent the Plaintiff a correspondence stating that the cash value of the Life Insurance Policy was insufficient to keep said Life Insurance Policy in force beyond December 28, 2010 and that coverage under the Life Insurance Policy as a result ended on February 27, 2011. The Defendant's April 19, 2011 correspondence to the Plaintiff and the Defendant's reimbursement of the Plaintiff's $252.47 remittance are collectively attached hereto as "Exhibit F".

10. Strangely, the Defendant sent the Plaintiff another Notification of Pending Lapse extending to May 28, 2011 along with a reimbursement of remittance in the amount of $251.47, both of which are collectively attached hereto as "Exhibit G".

11. Next, on or about Mary 4, 2011, the Plaintiff, through counsel, sent the Defendant a written demand to immediately pay the life insurance proceeds. The May 4, 2011 demand letter from the Plaintiff's attorney to the Defendant is attached hereto as "Exhibit H".

12. Lastly, on or about May 31, 2011, the Defendant replied to the Plaintiff's demand letter by stating that the reinstatement was processed in error "as the insured was deceased prior to the request to reinstate". The Defendant's May 31, 2011 correspondence denying reinstatement of the Life Insurance Policy to the Plaintiff's legal counsel of record is attached hereto as "Exhibit I".

13. Given that the Plaintiff complied with the Defendant's requirements for reinstatement of the Life Insurance Policy in a timely manner and/or certainly reasonably relied upon the representations of the Defendant to the Plaintiff's detriment, the Defendant wrongfully denied reinstatement of the Life Insurance Policy.

14. Despite the above, the Plaintiff has continued to try to work with the Defendant in an effort to have this matter resolved. Nevertheless, the Defendant refuses and/or otherwise fails to take any action to rectify this situation.

15. The Plaintiff would aver that the actions and/or omissions of the Defendant as alleged were willful, wanton, and malicious, done with reckless disregard for the Plaintiff's rights and were done without just cause or excuse, so that the Plaintiff is entitled to exemplary damages.

## FIRST CLAIM – BREACH OF CONTRACT

16. The Plaintiff reincorporates all of the other paragraphs of this Complaint as if fully stated herein.

17. Ultimately, the Plaintiff duly performed all of the conditions of the above described Life Insurance Policy on her part and is clearly a third party beneficiary.

18.  The Defendant has breached its obligations under the Life Insurance Policy by denying and/or refusing and/or failing to pay the Plaintiffs' claim for life insurance proceeds following the death of her husband.

19.  As a direct and proximate result of the Defendant's breach of the Life Insurance Policy the Plaintiff has and continues to incur substantial damages.

## SECOND CLAIM – BAD FAITH REFUSAL TO PAY CLAIM

20.  The Plaintiff reincorporates all of the other paragraphs of this Complaint as if fully stated herein.

21.  The Plaintiff duly performed the conditions of said Life Insurance Policy by following the Defendant's instructions for reinstating the Life Insurance Policy.

22.  The Defendant acted in bad faith in denying and/or refusing and/or failing to pay the Plaintiff's claim for life insurance proceeds following the death of her late husband Mr. Joy in violation of T.C.A. Section 56-7-105 and related sections.

23.  As a direct and proximate result of the Defendant's bad faith denial of Plaintiff's claim for life insurance proceeds, the Plaintiff has and continues to incur substantial damages.

## THIRD CLAIM – FRAUD AND/OR MISREPRESENTATION

24.  The Plaintiff reincorporates all of the other paragraphs of this Complaint as if fully stated herein.

25. The Defendant and/or its employees, agents, representatives, or other individuals working on its behalf, engaged in fraud and/or misrepresentation when it falsely represented to the Plaintiff and her late husband that it would provide life insurance coverage to the Plaintiff in the event of Mr. Joy's death when in fact it did not.

26. The Defendant and/or its employees, agents, representatives, or other individuals working on its behalf, engaged in fraud and/or misrepresentation when it represented to the Plaintiff that it would reinstate the lapsed Life Insurance Policy upon her submission of a reinstatement application and processing fee for back owed premiums when it fact it denied reinstatement altogether.

27. The Defendant's actions were intentional, willful, malicious, and/or reckless and entitle the Plaintiff to punitive damages.  The Defendant knew of the foregoing falsehoods and made them recklessly with the intent to deceive the Plaintiff and her late husband, to induce them into entering into a Life Insurance Policy with the Defendant, and to induce the Plaintiff to send the Defendants more money to reinstate a lapsed Life Insurance Policy that it had no intention of reinstating.

28. Alternatively, the Defendant's actions and/or omissions were negligent in that the Defendant failed to exercise due care and should have reasonably foreseen that its herein-stated actions and/or omissions would harm or damage the Plaintiff financially.

29. As a sole, direct, and proximate cause of the Defendant's actions and/or omissions the Plaintiff has and continues to incur substantial damages.

## FOURTH CLAIM – VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

30. The Plaintiff reincorporates all of the other paragraphs of this Complaint as if fully stated herein.

31. The Defendant engaged in unfair and/or deceptive trade practices in violation of T.C.A. Section 47-18-104 et seq. and related sections by doing the following:

A. Representing to the Plaintiff that she was insured by the Defendant in the event of Mr. Joy's death and then denying and/or refusing and/or failing to pay for such life insurance coverage; and/or

B. Representing to the Plaintiff that, if she comply with certain terms and conditions to have her Life Insurance Policy reinstated after the late Mr. Joy stopped paying the premiums, it would not lapse.

32. As a direct and proximate result of the Defendant's unfair and/or deceptive trade practices, the Plaintiff has and continues to incur substantial damages.

## FIFTH CLAIM – DETRIMENTAL RELIANCE

33. The Plaintiff reincorporates all of the other paragraphs of this Complaint as if fully stated herein.

34. The Plaintiff and her late husband, in reasonable reliance on the above mentioned Life Insurance Policy and/or express representations of the Defendant, expended monies in paying insurance premiums as well as reinstatement processing fees to the Defendant. The Plaintiff's expenditures were to her detriment in that the Defendant unjustly denied and/or refused and/or otherwise failed to pay the Plaintiff's claim for life insurance proceeds following her husband's death.

35.  As a direct and proximate result, the Plaintiff has and continues to incur substantial damages.

## JURY DEMAND

The Plaintiff demands a jury trial on all issues which may be determined by a jury.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff prays:

1.  That proper service issue and be served upon the Defendant requiring it to answer the Complaint for Damages within the time allotted by the Tennessee Rules of Civil Procedure.

2.  That the Plaintiff be awarded a judgment against the Defendant in the minimum amount of $200,000.00 in compensatory damages or an amount to be more specifically determined at a later date.

3.  That the Plaintiff be awarded a judgment against the Defendant in the minimum amount of $600,000.00 in punitive damages or an amount to be more specifically determined at a later date.

4.  That the Plaintiff be awarded a judgment against the Defendant in the minimum amount of $600,000.00 in treble damages at the maximum rate permitted by law pursuant to the Tennessee Consumer Protection Act.

5.  That the Plaintiff be awarded prejudgment interest at the maximum rate permitted by law against Defendant.

6.   That the Plaintiff be awarded reasonable attorneys' fees incurred in this matter pursuant to the Tennessee Consumer Protection Act and/or bad faith refusal to pay a claim.

7.   That the Plaintiff be awarded discretionary costs as this Court deems appropriate.

8.   That the Plaintiff be awarded the court costs and other expenses of this action.

9.   For such other and further relief as to which she may be entitled by law.

Respectfully submitted,

SNIDER & HORNER, PLLC

KEVIN A. SNIDER (B.P.R. #18231)
Attorney for the Plaintiff
Corporate Gardens
9056 Stone Walk Place
Germantown, TN 38138
(901) 751-3777

**Metropolitan Life**
AND AFFILIATED COMPANIES

# Metropolitan Insurance and Annuity Company

A Stock Company Incorporated in Delaware

Metropolitan Insurance and Annuity Company will pay the benefits provided by
this policy according to its provisions.

*Richard M. Blackwell*
Richard M. Blackwell
Secretary

*J. P. Maurer*
J. P. Maurer
President and Chief Executive Officer

### Flexible-Premium Life Insurance Policy

Life insurance payable if the insured dies before the Final Date of Policy.
Accumulation Fund payable on the Final Date.

Adjustable death benefit.

Premiums payable while the insured is alive and before the Final Date of Policy.
Premiums must be sufficient to keep the policy in force

Not eligible for dividends.

**10-Day Right to Examine Policy**—Please read this policy. You may return this
policy to us or to the sales representative through whom you bought it within 10
days from the date you receive it. If you return it within the 10-day period, the
policy will be void from the beginning. We will refund any premium paid.

See Table of Contents and Company address on back cover

7-82-MIAC

METROPOLITAN INSURANCE AND ANNUITY COMPANY - WILMINGTON, DELAWARE 19808
POLICY SPECIFICATIONS

DATE OF POLICY . . . . . . . . . . . . . JANUARY 28, 1985

INSURED'S AGE AND SEX  . . . . . . . . . 33 MALE

FINAL DATE OF POLICY . . . . . . . . . . POLICY ANNIVERSARY AT AGE 95

DEATH BENEFIT . . . . . . . . . . . . . OPTION A  (SEE PAGE 5)

OWNER . . . . . . . . . . . . . . . . . THE INSURED

BENEFICIARY . . . . . . . . . . . . . . SEE APPLICATION

CONTINGENT BENEFICIARY . . . . . . . . . SEE APPLICATION


POLICY CLASSIFICATION . . . . . . . . . NON-SMOKER



INSURED

INCREASE IN                   MORRIS JOY
SPECIFIED
FACE AMOUNT
OF INSURANCE BY    $96,716-AS OF MAY 28, 1997    854146806UL . POLICY NUMBER

PLAN . . . . . FLEXIBLE PREMIUM LIFE               C90    035

NEW SPECIFIED FACE AMOUNT   $200,000-AS OF MAY 28, 1997


THIS POLICY PROVIDES LIFE INSURANCE COVERAGE UNTIL THE FINAL DATE IF

SUFFICIENT PREMIUMS ARE PAID.  THE PLANNED PREMIUM SHOWN BELOW MAY

NEED TO BE INCREASED TO KEEP THIS POLICY AND COVERAGE IN FORCE.


PLANNED PREMIUM OF      $25.00-PAYABLE CHECK-O-MATIC

(TOTAL PREMIUM FOR LIFE INSURANCE BENEFIT, ANY SUPPLEMENTAL RATING

AND ANY ADDITIONAL BENEFITS LISTED BELOW)



ADDITIONAL BENEFITS

| RIDER | FINAL DATE OF RIDER | RIDER INSURANCE BENEFIT |
|---|---|---|
| SPOUSE TERM RIDER   NS | MAR.  28, 1990 | $30,000 |
| CHILD TERM RIDER | JAN.  28, 2017 | $5,000 |


FORM 7-82  MIAC  TENN.              3            401.402.403.404.

METROPOLITAN INSURANCE AND ANNUITY COMPANY - WILMINGTON, DELAWARE 19808
POLICY SPECIFICATIONS

DATE OF POLICY . . . . . . . . . . . . . . JANUARY 28, 1985

INSURED'S AGE AND SEX . . . . . . . . . . 33 MALE

FINAL DATE OF POLICY . . . . . . . . . . . POLICY ANNIVERSARY AT AGE 95

DEATH BENEFIT . . . . . . . . . . . . . . OPTION B  (SEE PAGE 5)

OWNER . . . . . . . . . . . . . . . . . . THE INSURED

BENEFICIARY . . . . . . . . . . . . . . . SEE APPLICATION

CONTINGENT BENEFICIARY . . . . . . . . . . SEE APPLICATION


POLICY CLASSIFICATION . . . . . . . . . . NON-SMOKER



INSURED

INCREASE IN                      MORRIS JOY
SPECIFIED
FACE AMOUNT
OF INSURANCE BY     $50,000-AS OF JAN. 28, 1990   854146806UL . POLICY NUMBER

PLAN . . . . . . FLEXIBLE PREMIUM LIFE          C70   035

TOTAL INSURANCE COVERAGE    $100,000-AS OF JAN. 28, 1990


THIS POLICY PROVIDES LIFE INSURANCE COVERAGE UNTIL THE FINAL DATE IF
SUFFICIENT PREMIUMS ARE PAID. THE PLANNED PREMIUM SHOWN BELOW MAY
NEED TO BE INCREASED TO KEEP THIS POLICY AND COVERAGE IN FORCE.

PLANNED PREMIUM OF         $25.00-PAYABLE CHECK-O-MATIC

(TOTAL PREMIUM FOR LIFE INSURANCE BENEFIT, ANY SUPPLEMENTAL RATING
AND ANY ADDITIONAL BENEFITS LISTED BELOW)



ADDITIONAL BENEFITS

| RIDER | FORM NUMBER | FINAL DATE OF RIDER | RIDER INSURANCE BENEFIT |
|---|---|---|---|
| SPOUSE TERM RIDER   NS | 71ST-82 MIAC | MAR. 28, 1990 | $30,000 |
| CHILD TERM RIDER | 71CT-82 MIAC | JAN. 28, 2017 | $5,000 |


FORM 7-82  MIAC  TENN.            3⃝            401.402.403.404.

METROPOLITAN INSURANCE AND ANNUITY COMPANY - WILMINGTON, DELAWARE 19808
POLICY SPECIFICATIONS

DATE OF POLICY . . . . . . . . . . . . JANUARY 28, 1985

INSURED'S AGE AND SEX . . . . . . . . 33 MALE

FINAL DATE OF POLICY . . . . . . . . . POLICY ANNIVERSARY AT AGE 95

DEATH BENEFIT . . . . . . . . . . . . OPTION B  (SEE PAGE 5)

OWNER . . . . . . . . . . . . . . . . THE INSURED

BENEFICIARY . . . . . . . . . . . . . SEE APPLICATION

CONTINGENT BENEFICIARY . . . . . . . . SEE APPLICATION


POLICY CLASSIFICATION . . . . . . . . NON-SMOKER



INSURED

MORRIS JOY

INCREASE IN
SPECIFIED
FACE AMOUNT
OF INSURANCE BY      $50,000-AS OF JAN. 28, 1990    854146806UL . POLICY NUMBER

PLAN . . . . . . . FLEXIBLE PREMIUM LIFE           C70    035

TOTAL INSURANCE COVERAGE      $100,000-AS OF JAN. 28, 1990


THIS POLICY PROVIDES LIFE INSURANCE COVERAGE UNTIL THE FINAL DATE IF

SUFFICIENT PREMIUMS ARE PAID.  THE PLANNED PREMIUM SHOWN BELOW MAY

NEED TO BE INCREASED TO KEEP THIS POLICY AND COVERAGE IN FORCE.

PLANNED PREMIUM OF      $77.00-PAYABLE CHECK-O-MATIC

(TOTAL PREMIUM FOR LIFE INSURANCE BENEFIT, ANY SUPPLEMENTAL RATING

AND ANY ADDITIONAL BENEFITS LISTED BELOW)



ADDITIONAL BENEFITS

| RIDER | FORM NUMBER | FINAL DATE OF RIDER | RIDER INSURANCE BENEFIT |
|---|---|---|---|
| SPOUSE TERM RIDER   NS | 71ST-82 MIAC | JAN. 28, 2017 | $30,000 |
| CHILD TERM RIDER | 71CT-82 MIAC | JAN. 28, 2017 | $5,000 |


FORM 7-82  MIAC  TENN.              3A              401.402.403.404.

METROPOLITAN INSURANCE AND ANNUITY COMPANY - WILMINGTON, DELAWARE 19808

DATE OF POLICY . . . . . . . . . . . . . . JANUARY 28, 1985

INSURED'S AGE AND SEX . . . . . . . . . 33 MALE

FINAL DATE OF POLICY . . . . . . . . . . POLICY ANNIVERSARY AT AGE 95

DEATH BENEFIT . . . . . . . . . . . . . OPTION B   (SEE PAGE 5)

OWNER . . . . . . . . . . . . . . . . . SEE APPLICATION

BENEFICIARY . . . . . . . . . . . . . . SEE APPLICATION

CONTINGENT BENEFICIARY . . . . . . . . . SEE APPLICATION


POLICY CLASSIFICATION . . . . . . . . . . NON-SMOKER


INSURED

MORRIS JOY

SPECIFIED
FACE AMOUNT
OF INSURANCE        $50,000-AS OF JAN. 28, 1985    854146806UL . POLICY NUMBER

PLAN . . . . . . FLEXIBLE PREMIUM LIFE            C70    035


THIS POLICY PROVIDES LIFE INSURANCE COVERAGE UNTIL THE FINAL DATE IF
SUFFICIENT PREMIUMS ARE PAID.  THE PLANNED PREMIUM SHOWN BELOW MAY
NEED TO BE INCREASED TO KEEP THIS POLICY AND COVERAGE IN FORCE.

PLANNED PREMIUM OF      $65.17-PAYABLE CHECK-O-MATIC

(TOTAL PREMIUM FOR LIFE INSURANCE BENEFIT, ANY SUPPLEMENTAL RATING
AND ANY ADDITIONAL BENEFITS LISTED BELOW)


ADDITIONAL BENEFITS

| RIDER | FORM NUMBER | FINAL DATE OF RIDER | RIDER INSURANCE BENEFIT |
|---|---|---|---|
| SPOUSE TERM RIDER | 71ST-82 MIAC | JAN. 28, 2017 | $30,000 |
| CHILD TERM RIDER | 71CT-82 MIAC | JAN. 28, 2017 | $5,000 |


FORM 7-82  MIAC                    3                    401.402.403.404.

### Table of Guaranteed Maximum Rates For Each $1,000 of Term Insurance
#### (See "Cost of Term Insurance" Provision on page 6.)

| Age Male | Age Female | Monthly Rate* | Age Male | Age Female | Monthly Rate* | Age Male | Age Female | Monthly Rate* |
|---|---|---|---|---|---|---|---|---|
| 0 | — | .370 | 33 | 36 | .196 | 79 | 82 | 9.320 |
| 1 | — | .136 | 34 | 37 | .204 | 80 | 83 | 10.174 |
| 2 | — | .124 | 35 | 38 | .214 | 81 | 84 | 11.088 |
| 3 | — | .119 | 36 | 39 | .227 | 82 | 85 | 12.053 |
| 4 | — | .114 | 37 | 40 | .242 | 83 | 86 | 13.070 |
| 5 | — | .110 | 38 | 41 | .261 | 84 | 87 | 14.146 |
| 6 | — | .106 | 39 | 42 | .283 | 85 | 88 | 15.289 |
| 7 | — | .103 | 40 | 43 | .307 | 86 | 89 | 16.509 |
| 8 | — | .101 | 41 | 44 | .334 | 87 | 90 | 17.822 |
| 9 | — | .100 | 42 | 45 | .363 | 88 | 91 | 19.256 |
| 10 | — | .101 | 43 | 46 | .394 | 89 | 92 | 20.652 |
| 11 | — | .103 | 44 | 47 | .429 | 90 | 93 | 22.665 |
| — | 0 | .329 | 45 | 48 | .467 | 91 | 94 | 24.769 |
| — | 1 | .126 | 46 | 49 | .509 | 92 | — | 27.258 |
| — | 2 | .115 | 47 | 50 | .556 | 93 | — | 30.251 |
| — | 3 | .110 | 48 | 51 | .608 | 94 | — | 34.025 |
| — | 4 | .105 | 49 | 52 | .666 | | | |
| — | 5 | .101 | 50 | 53 | .729 | | | |
| — | 6 | .097 | 51 | 54 | .798 | | | |
| — | 7 | .094 | 52 | 55 | .873 | | | |
| — | 8 | .092 | 53 | 56 | .955 | | | |
| — | 9 | .092 | 54 | 57 | 1.044 | | | |
| — | 10 | .092 | 55 | 58 | 1.141 | | | |
| — | 11 | .094 | 56 | 59 | 1.249 | | | |
| — | 12 | .096 | 57 | 60 | 1.367 | | | |
| — | 13 | .099 | 58 | 61 | 1.496 | | | |
| — | 14 | .102 | 59 | 62 | 1.638 | | | |
| 12 | 15 | .107 | 60 | 63 | 1.794 | | | |
| 13 | 16 | .113 | 61 | 64 | 1.963 | | | |
| 14 | 17 | .118 | 62 | 65 | 2.148 | | | |
| 15 | 18 | .125 | 63 | 66 | 2.351 | | | |
| 16 | 19 | .131 | 64 | 67 | 2.573 | | | |
| 17 | 20 | .138 | 65 | 68 | 2.819 | | | |
| 18 | 21 | .143 | 66 | 69 | 3.091 | | | |
| 19 | 22 | .147 | 67 | 70 | 3.392 | | | |
| 20 | 23 | .151 | 68 | 71 | 3.722 | | | |
| 21 | 24 | .153 | 69 | 72 | 4.076 | | | |
| 22 | 25 | .156 | 70 | 73 | 4.452 | | | |
| 23 | 26 | .158 | 71 | 74 | 4.843 | | | |
| 24 | 27 | .160 | 72 | 75 | 5.248 | | | |
| 25 | 28 | .162 | 73 | 76 | 5.671 | | | |
| 26 | 29 | .164 | 74 | 77 | 6.124 | | | |
| 27 | 30 | .167 | 75 | 78 | 6.623 | | | |
| 28 | 31 | .171 | 76 | 79 | 7.183 | | | |
| 29 | 32 | .175 | 77 | 80 | 7.817 | | | |
| 30 | 33 | .180 | 78 | 81 | 8.532 | | | |
| 31 | 34 | .185 | | | | | | |
| 32 | 35 | .190 | | | | | | |

*If there is a supplemental rating for the life insurance benefit, as shown on page 3, the monthly deduction for such supplemental rating must be added to the monthly rate determined from this table.

401-82

4

## Understanding This Policy

"You" and "your" refer to the owner of this policy.

"We", "us" and "our" refer to Metropolitan Insurance and Annuity Company.

The "insured" named on page 3 is the person at whose death the insurance proceeds will be payable.

The "Specified Face Amount of Insurance" as of the date of policy is shown on page 3. A new page 3 will be issued to show any change in the Specified Face Amount of Insurance that has occurred at your request.

The "Date of Policy" is shown on page 3.

The "Final Date of Policy" is the policy anniversary on which the insured is age 95.

Policy years and months are measured from the date of policy. For example, if the date of policy is May 5, 1990, the first policy month ends June 4, 1990, and the first policy year ends May 4, 1991. Similarly, the first monthly anniversary is June 5, 1990, and the first policy anniversary is May 5, 1991.

The "accumulation fund" forms the basis for the benefits provided under your policy. Computation of the accumulation fund is described on page 6.

The "Designated Office" is our Executive Office at One Madison Avenue, New York, N. Y. 10010. We may, by written notice, name other offices within the United States to serve as Designated Offices.

To make this policy clear and easy to read, we have left out many cross-references and conditional statements. Therefore, the provisions of the policy must be read as a whole. For example, our payment of the insurance proceeds (see page 5) depends upon the payment of sufficient premiums (see page 7).

To exercise your rights, you should follow the procedures stated in this policy. If you want to request a payment, adjust the death benefit, change a beneficiary, change an address or request any other action by us, you should do so on the forms prepared for each purpose. You can get these forms from your sales representative or our Designated Office.

## Payment When Insured Dies

**Insurance Proceeds**—If the insured dies before the Final Date of Policy, an amount of money, called the insurance proceeds, will be payable to the beneficiary. The insurance proceeds are the sum of:

- The death benefit described below.

  PLUS

- Any insurance on the insured's life that may be provided by riders to this policy.

  MINUS

- Any policy loan and loan interest.

We will pay the insurance proceeds to the beneficiary after we receive proof of death and a proper written claim.

**Death Benefit**—The death benefit under the policy will be either (1) or (2) below, whichever is chosen and is in effect on the date of death:

1. Under Option A, the greater of:

   (a) the Specified Face Amount of Insurance;

   or

   (b) 110% of the accumulation fund on the date of death.

2. Under Option B:

   The Specified Face Amount of Insurance;

   PLUS

   The accumulation fund on the date of death.

**Death Benefit Adjustment**—At any time after the first policy year while this policy is in force, you may change the death benefit option or change (either increase or decrease) the Specified Face Amount of Insurance, subject to the following.

1. In the event of a change in the death benefit option, we will change the Specified Face Amount of Insurance as needed.

2. The Specified Face Amount of Insurance may not be reduced to less than $50,000 during the first 5 policy years or to less than $25,000 after the 5th policy year.

3. For any change which would increase the death benefit, you must provide evidence satisfactory to us of the insurability of the insured. Also, the increased death benefit will be subject to a charge of $3 for each $1,000 of insurance increase. We will deduct this charge from the accumulation fund as of the date the increase takes effect.

4. No change in the death benefit will take effect unless the accumulation fund, after the change, is sufficient to keep this policy in force for at least 2 months. Subject to this condition, a request for a change in the death benefit will take effect on the monthly anniversary which coincides with or next follows: (a) if evidence of insurability is required, the date we approve the request; or (b) if not, the date of the request.

5. We will issue a new page 3 for this policy showing the change. We may require that you send us this policy to make the change.

Amended by R.S. 926 MIAC

6

## Computation of Accumulation Fund

**Accumulation Fund**—The value of the accumulation fund is as follows:

- On the date of policy—91% of the first premium;

  MINUS

  The monthly deduction for the first month.

- On any monthly anniversary—The value on the last monthly anniversary;

  PLUS

  One month's interest on such value at the currently applicable rates;

  PLUS

  91% of the premiums received since the last monthly anniversary;

  MINUS

  The monthly deduction for the month beginning on the current monthly anniversary.

- On other than a monthly anniversary—The value on the last monthly anniversary;

  PLUS

  91% of the premiums received since the last monthly anniversary.

Note:   The 9% deduction from premiums is an expense charge.

If you make a partial cash withdrawal (see page 7), the accumulation fund defined above will be reduced by the amount of such withdrawal.

**Monthly Deduction**—The deduction for any policy month is the sum of the following amounts, determined as of the beginning of that month:

- The monthly cost of the term insurance (See Cost of Term Insurance on page 6).

- The monthly cost of any benefits provided by riders.

- For each of the first 12 policy months only, a charge of $35 plus $.25 for each $1,000 of Specified Face Amount of Insurance.

**Interest Rate**—The guaranteed interest rate used to determine the accumulation fund is .32737% a month,

compounded monthly. This is equivalent to a rate of 4% a year, compounded annually.

Interest will be credited to the accumulation fund each month as follows:

- At the guaranteed interest rate on the first $1,000 in the accumulation fund.

- In the manner and at the rate we set from time to time, on amounts in excess of $1,000 in the accumulation fund. The rate we set will never be less than the guaranteed interest rate.

- If there is a loan against this policy, interest on that portion of the accumulation fund in excess of $1,000 that equals the loan will be at a rate we set. The rate with respect to the amount of the loan will never be less than the guaranteed interest rate.

**Example**—Suppose the accumulation fund is $10,000 and there is a policy loan of $2,000. If we set the annual interest rates at 10% for amounts over $1,000 in the accumulation fund and at 6% for the amount of any loan, then interest would be credited: at the rate of 4% on the first $1,000; at the rate of 6% on the next $2,000 representing the amount of the loan; and at the rate of 10% on the remaining $7,000.

**Cost of Term Insurance**—Under either death benefit option, the amount of term insurance for any policy month is equal to:

- The death benefit divided by 1.0032737;

  MINUS

- The accumulation fund.

The accumulation fund used in this calculation is the accumulation fund at the beginning of the policy month before the deduction for the monthly cost of term insurance, but after the deductions for riders and any other charges.

The cost of the term insurance for any policy month is equal to the amount of term insurance multiplied by the monthly term insurance rate. Monthly term insurance rates will be set by us from time to time, based on the insured's age, sex, and underwriting class. But these rates will never be more than the maximum rates shown in the table on page 4.

402-82

## Payments During Insured's Lifetime

**Payment on Final Date of Policy**—If the insured is alive on the Final Date of Policy, we will pay you the accumulation fund minus any policy loan and loan interest. Coverage under this policy will then end.

**Cash Value**—Your policy has a cash value while the insured is alive.

The cash value at any time during the first policy year will equal:

- The accumulation fund;

    MINUS

- $35 times the number of full policy months left in that year;

    MINUS

- Any policy loan and loan interest.

After the first policy year, the cash value at any time will equal:

- The accumulation fund;

    MINUS

- The interest in excess of the guaranteed rate credited to the fund during the last 12 policy months;

    MINUS

- Any policy loan and loan interest.

**Full and Partial Cash Withdrawal**—We will pay you all or part of the cash value after we receive your request at our Designated Office. The cash value will be determined as of the date we receive your request. If you request and are paid the full cash value, this policy and all our obligations under it will end. We may require surrender of this policy before we pay you the full cash value.

Each partial withdrawal of cash value must be at least $250. When a partial withdrawal is made, we will reduce the accumulation fund by the amount of the partial withdrawal. If Option A is in effect, we will also reduce the Specified Face Amount of Insurance by the amount of the partial withdrawal; and a new page 3 will then be issued. We may require that you send us this policy to make the change.

If you request a partial withdrawal which would reduce the cash value to less than $500, we will treat it as a request for a full cash withdrawal. Also, if Option A is in effect and the Specified Face Amount of Insurance would be reduced to less than $50,000 during the first 5 policy years, or to less than $25,000 thereafter, we will treat your request as a request for a full cash withdrawal.

**Policy Loan**—You may also get cash from us by taking a policy loan. If there is an existing loan you can increase it. The most you can borrow at any time is the cash value on the next monthly anniversary, less the monthly deduction for the following month.

Loan interest is charged daily at the rate of 8% a year, and is due at the end of each policy year. Interest not paid within 31 days after it is due will be added to the amount of the loan. It will be added as of the due date and will bear interest at the same rate as the rest of the loan.

A loan will affect the interest rate we credit to amounts over $1,000 in the accumulation fund (see "Interest Rate" on page 6).

**Loan Repayment**—You may repay all or part (but not less than $25) of a policy loan at any time while the insured is alive and this policy is in force. If any payment you make to us is intended as a loan repayment, rather than a premium payment, you must tell us this when you make the payment.

Failure to repay a policy loan or to pay loan interest will not terminate this policy unless the accumulation fund, minus the policy loan and loan interest, is insufficient to pay the monthly deduction due on a monthly anniversary. In that case, the Grace Period provision will apply (see page 8).

**Deferment**—We may delay paying a full or partial cash withdrawal for up to 6 months from the date we receive a request for payment. If we delay for 30 days or more, interest will be paid from the date we receive the request at a rate not less than 3% a year.

We also may delay making a policy loan, except for a loan to pay a premium, for up to 6 months from the date you request the loan.

## Premiums

**Premium Payments**—Premiums may be paid at our Designated Office or to our sales representative. A receipt signed by our President or Secretary and countersigned by the sales representative will be given for a premium paid to the sales representative.

The first premium is due on the date of policy and will be credited as of that date. No insurance will take effect before the first premium is paid. Other premiums may be paid at any time while the policy is in force and before the Final Date of Policy and in any amount and subject to the limits described below.

We will send premium notices, if you request in writing, according to the planned premium shown on page 3. You may skip planned premium payments or change their frequency and amount if the accumulation fund is large enough to keep your policy in force.

8

## Premiums (Continued)

**Limits**—The first premium may not be less than the planned premium shown on page 3. Each premium payment after the first must be at least $250 ($50 for a Check-O-Matic payment).

We may increase these minimum premium limits. No increase will take effect until 90 days after notice is sent.

The total premiums paid in a policy year may not exceed the maximum we set for that year.

**Grace Period**—If the accumulation fund on any monthly anniversary, minus any policy loan and loan interest, is less than the monthly deduction for that month, there will be a grace period of 61 days after that anniversary to pay an amount that will cover the monthly deduction. We will send you a notice at the start of the grace period. We will also send a notice to any assignee on our records.

If we do not receive a sufficient amount by the end of the grace period, your policy will then end without value.

If the insured dies during the grace period, we will pay the insurance proceeds minus any overdue monthly deduction.

**Reinstatement**—If the grace period has ended and you have not paid the required premium and have not surrendered your policy for its cash value, you may reinstate this policy while the insured is alive if you:

1. Ask for reinstatement within 3 years after the end of the grace period;

2. Provide evidence of insurability satisfactory to us;

3. Pay a sufficient amount to keep the policy in force for at least 2 months after the date of reinstatement;

4. If the grace period began during the first policy year, pay:
   (a) an amount sufficient to cover the unpaid portion of the charges applicable during the first 12 policy months; plus (b) interest on such amount to the date of reinstatement at the rate of 6% a year.

The effective date of the reinstated policy will be the monthly anniversary following the date we approve the reinstatement application. If we approve it on a monthly anniversary, the effective date will be that anniversary.

## Ownership and Beneficiary

**Owner**—As owner, you may exercise all rights under your policy while the insured is alive. You may name a contingent owner who would become the owner if you should die before the insured.

**Change of Ownership**—You may name a new owner at any time. If a new owner is named, any earlier choice of a contingent owner, beneficiary, contingent beneficiary or optional income plan will be canceled, unless you specify otherwise.

**Beneficiary**—The beneficiary is the person or persons to whom the insurance proceeds are payable when the insured dies. You may name a contingent beneficiary to become the beneficiary if all the beneficiaries die while the insured is alive. If no beneficiary or contingent beneficiary is named, or if none is alive when the insured dies, the owner (or the owner's estate) will be the beneficiary. While the insured is alive, the owner may change any beneficiary or contingent beneficiary.

If more than one beneficiary is alive when the insured dies, we will pay them in equal shares, unless you have chosen otherwise.

**How to Change the Owner or the Beneficiary**—You may change the owner, contingent owner, beneficiary or contingent beneficiary of this policy by written notice or assignment of the policy. No change is binding on us until it is recorded at our Designated Office. Once recorded, the change binds us as of the date you signed it. The change will not apply to any payment made by us before we recorded your request. We may require that you send us this policy to make the change.

**Collateral Assignment**—Your policy may be assigned as collateral. All rights under the policy will be transferred to the extent of the assignee's interest. We are not bound by any assignment unless it is in writing and is recorded at our Designated Office. We are not responsible for the validity of any assignment.

## General Provisions

**The Contract**—This policy includes any riders and, with the application attached when the policy is issued, makes up the entire contract. All statements in the application will be representations and not warranties. No statement will be used to contest the policy unless it appears in the application.

**Limitation on Sales Representative's Authority**—No sales representative or other person except our President, a Vice-President, or the Secretary may (a) make or change any contract of insurance; or (b) make any binding promises about policy benefits; or (c) change or waive any of the terms of this policy. Any change is valid only if made in writing and signed by our President, a Vice-President, or the Secretary.

**Incontestability**—We will not contest the validity of your policy after it has been in force during the insured's lifetime for 2 years from the date of policy. We will not contest the validity of any increase in the death benefit after such increase has been in force during the insured's lifetime for 2 years from its effective date.

**Suicide**—The insurance proceeds will not be paid if the insured commits suicide, while sane or insane, within 2 years from the date of policy. Instead we will pay the beneficiary an amount equal to all premiums paid, without interest, less any policy loan and loan interest and less any partial cash withdrawals. If the insured commits suicide, while sane or insane, more than 2 years after the date of this policy but within 2 years from the effective date of any increase in the death benefit, our liability with respect to such increase will be limited to its cost.

**Age and Sex**—If the insured's age or sex on the date of the policy is not correct as shown on page 3, we will adjust the benefits under this policy. The adjusted benefits will be those that the premiums paid would have provided at the correct age and sex.

**Nonparticipation**—This policy is not eligible for dividends; it does not participate in any distribution of our surplus.

**Computation of Values**—The minimum accumulation fund and policy reserves are computed using interest at the rate of 4% a year. These values and the maximum term insurance rates shown on page 4 are based on the 1958 Commissioners Standard Ordinary Mortality Table, age last birthday for male lives. For female lives, they are based on that table set back 3 years at ages 15 and older and on the female extension of that table at ages under 15.

We have filed a detailed statement of the method of computation with the insurance supervisory official of the state in which this policy is delivered. The values under this policy are equal to or greater than those required by the law of that state.

**Annual Reports**—Each year we will send you a report showing the current death benefit, accumulation fund and cash value for this policy.

It will also show the amount and type of credits to and deductions from the accumulation fund during the past policy year.

The report will also include any other information required by state laws and regulations.

**Illustration of Future Benefits**—At any time, we will provide an illustration of the future benefits and values under your policy. You must ask in writing for this illustration and pay the service fee set by us.

12

## Optional Income Plans (Continued)

**Minimum Payments under Optional Income Plans**—Monthly payments under Options 2, 3, 3A and 4 for each $1,000 applied will not be less than the amounts shown in the following Tables.

| Option 2. Instalment Income for a Stated Period | | | | | |
|---|---|---|---|---|---|
| Monthly Payments for each $1,000 Applied | | | | | |
| Years Chosen | Minimum Amount of Each Monthly Payment | Years Chosen | Minimum Amount of Each Monthly Payment | Years Chosen | Minimum Amount of Each Monthly Payment |
| 1 | $84.47 | 11 | $9.86 | 21 | $5.32 |
| 2 | 42.86 | 12 | 8.24 | 22 | 5.15 |
| 3 | 28.99 | 13 | 7.71 | 23 | 4.99 |
| 4 | 22.06 | 14 | 7.26 | 24 | 4.84 |
| 5 | 17.91 | 15 | 6.87 | 25 | 4.71 |
| 6 | 15.14 | 16 | 6.53 | 26 | 4.59 |
| 7 | 13.16 | 17 | 6.23 | 27 | 4.47 |
| 8 | 11.68 | 18 | 5.96 | 28 | 4.37 |
| 9 | 10.53 | 19 | 5.73 | 29 | 4.27 |
| 10 | 9.61 | 20 | 5.51 | 30 | 4.18 |

To determine the minimum amount for quarterly payment, multiply the above monthly payment by 2.99; for semiannual by 5.96; and for annual by 11.84.

| Payee's Age | Option 3. Single Life Income—Guaranteed Payment Period | | | | | | Option 3A. Single Life Income—Guaranteed Return | |
|---|---|---|---|---|---|---|---|---|
| | Minimum Amount of each Monthly Payment for each $1,000 Applied | | | | | | Minimum Amount of each Monthly Payment for each $1,000 Applied | |
| | Guaranteed Payment Period | | | | | | | |
| | 10 years | | 15 years | | 20 years | | | |
| | Male | Female | Male | Female | Male | Female | Male | Female |
| 50 | $4.50 | $4.09 | $4.40 | $4.05 | $4.28 | $3.99 | $4.24 | $3.96 |
| 55 | 4.98 | 4.49 | 4.80 | 4.41 | 4.58 | 4.31 | 4.61 | 4.29 |
| 60 | 5.53 | 4.99 | 5.25 | 4.88 | 4.90 | 4.67 | 5.07 | 4.72 |
| 65 | 6.25 | 5.67 | 5.75 | 5.40 | 5.18 | 5.03 | 5.67 | 5.28 |
| 70 | 7.11 | 6.55 | 6.23 | 5.99 | 5.39 | 5.31 | 6.48 | 6.04 |
| 75 | 8.03 | 7.60 | 6.61 | 6.48 | 5.49 | 5.45 | 7.54 | 7.06 |
| 80 | 8.87 | 8.60 | 6.81 | 6.74 | 5.51 | 5.50 | 9.01 | 8.44 |
| 85 and over | 9.40 | 9.22 | 6.88 | 6.84 | 5.51 | 5.51 | 11.14 | 10.25 |

| Option 4. Joint and Survivor Life Income—Guaranteed Period of 10 years | | | |
|---|---|---|---|
| Minimum Amount of each Monthly Payment for each $1,000 Applied | | | |
| Age of Both Payees | One Male and One Female | Two Males | Two Females |
| 50 | $3.77 | $3.92 | $3.67 |
| 55 | 4.09 | 4.27 | 3.97 |
| 60 | 4.52 | 4.73 | 4.37 |
| 65 | 5.10 | 5.35 | 4.91 |
| 70 | 5.90 | 6.18 | 5.58 |
| 75 | 6.95 | 7.21 | 6.72 |

On request, we will provide additional information about amounts of minimum payments.

## Optional Income Plans

The insurance proceeds when the insured dies, or the amount payable on the Final Date of Policy, instead of being paid in one sum may be applied under one or more of the following income plans. Also, at any time before the Final Date and while the insured is alive, you may ask us to:

    (a)  Apply the full cash value of this policy under a non-life income plan;

              or

    (b)  Apply the accumulation fund of this policy, minus any policy loan and loan interest, under a life income plan.

### Non-Life Income Plans

**Option 1.** *Interest Income*
The amount applied will earn interest which will be paid monthly. Withdrawals of at least $500 each may be made at any time by written request.

**Option 2.** *Instalment Income for a Stated Period*
Monthly instalment payments will be made so that the amount applied, with interest, will be paid over the period chosen (from 1 to 30 years).

**Option 2A.** *Instalment Income of a Stated Amount*
Monthly instalment payments of a chosen amount will be made until the entire amount applied, with interest, is paid.

### Life Income Plans

**Option 3.** *Single Life Income—Guaranteed Payment Period*
Monthly payments will be made during the lifetime of the payee with a chosen guaranteed payment period of 10, 15 or 20 years.

**Option 3A.** *Single Life Income—Guaranteed Return*
Monthly payments will be made during the lifetime of the payee. If the payee dies before the total amount applied under this plan has been paid, the remainder will be paid in one sum as a death benefit.

**Option 4.** *Joint and Survivor Life Income*
Monthly payments will be made jointly to two persons while they are both alive and will continue during the remaining lifetime of the survivor. A total payment period of 10 years is guaranteed.

**Other Frequencies and Plans**—Instead of monthly payments, you may choose to have payments made quarterly, semiannually or annually. Other income plans may be arranged with us.

**Choice of Income Plans**—A choice of an income plan for insurance proceeds made by you in writing and recorded by us while the insured is alive will take effect when the insured dies. A choice of an income plan for the amount payable on the Final Date of Policy will take effect on such date. All other choices of income plans will take effect when recorded by us or later, if requested. When an income plan starts, we will issue a contract that will describe the terms of the plan. We may require that you send us this policy. We may also require proof of the payee's age.

Income plans for insurance proceeds may be chosen:

1. By you during the lifetime of the insured.

2. By the beneficiary, within one year after the date the insured died and before any payment has been made, if no election was in effect on the date of death.

Income plans for the amount payable on the Final Date of Policy may be chosen by you:

1. On or before the Final Date of Policy.

2. Within one year after the Final Date of Policy and before any payment has been made.

A choice of an income plan will not become effective unless each payment under the plan would be at least $50.

**Limitations**—If the payee is not a natural person, the choice of an income plan will be subject to our approval. An assignment for a loan will modify a prior choice of income plan. The amount due the assignee will be payable in one sum and the balance will be applied under the income plan.

Income plan payments may not be assigned and, to the extent permitted by law, will not be subject to the claims of creditors.

**Income Plan Rates**—Amounts applied under non-life income plans will earn interest at a rate we set from time to time. That rate will never be less than 3% a year.

Life income plan payments will be based on a rate set by us and in effect on the date the amount to be applied becomes payable.

Metropolitan Insurance and Annuity Company

## Rider: Spouse Term Insurance Benefit

*This rider is a part of the policy if it is referred to on page 3.*

This rider provides level term insurance on the life of the spouse payable to the spouse's beneficiary if the spouse dies before the Final Date of this rider.

**Spouse**—The spouse is the insured's spouse who is named in the application for this benefit.

**Date of Rider**—The date of this rider is the date of this policy.

**Final Date**—The Final Date of this rider is the policy anniversary on which the spouse is age 65.

**Term Insurance Benefit**—After we receive proof that the spouse died on or before the Final Date, we will pay the term insurance benefit to the spouse's beneficiary. The amount of the term insurance benefit is shown on page 3 under "Rider Insurance Benefit".

**Paid-Up Policy**—If the insured dies while this policy and rider are in force, the term insurance provided by this rider will be continued to the Final Date at no further cost. At our option, we or one of our affiliates will issue a supplementary paid-up policy to the owner of this rider.

**Option to Convert**—At any time before this rider ends, you may convert it without evidence of insurability to a new policy on the life of the spouse. To do so, send us a written request and this policy.

The amount of life insurance provided by the new policy may not be more than the amount of insurance under this rider. The date of the new policy will be the date of conversion.

At our option, the new policy will be issued by us or one of our affiliates. It may be on any life or endowment plan (but not a term plan) in an amount which is regularly issued at the spouse's age at the time of conversion. The new policy will be in the same underwriting class as this rider. If that class is not offered, the new policy will be in the class closest to it as determined by the company issuing the policy.

Any disability benefit, accidental death benefit, or other riders will be included in the new policy only if approved by the company issuing the policy.

The premium for the new policy will be based on the plan, amount of insurance, any riders included, the spouse's age

and sex on the date of the new policy and its underwriting class. Premium rates will be those in effect on the date of the new policy.

If you convert this rider within 2 years after its date, the company issuing the policy will rely on the representations in the application for this rider.

The "Incontestability" and "Suicide" provisions in the new policy will be measured from the date of this rider rather than from the date of the new policy.

### General Provisions

**Ownership**—The owner of this policy is the owner of this rider while both the insured and the spouse are alive. Such owner will also own any supplementary paid-up policy issued under this rider after the insured dies. However, if the owner is the insured, the spouse will be the owner of any supplementary paid-up policy issued under this rider after the insured dies.

The owner of the supplementary paid-up policy may exercise all of the rights provided under the paid-up policy, including the right to change the beneficiary.

**Beneficiary**—If no other beneficiary is named, the insured is the beneficiary of this benefit.

**Incontestability**—We will not contest the validity of this rider after it has been in force for 2 years from the date of this rider if the insured and the spouse are alive at the end of the 2-year period. We will also not contest the validity of any supplementary paid-up policy issued after the insured dies.

**Suicide**—If the insured or the spouse commits suicide, while sane or insane, within 2 years from the date of this rider, the benefits provided by this rider (or any paid-up policy issued under this rider) will be void. Instead, we will pay an amount equal to the cost of this rider to the date of death without interest.

**Reinstatement**—If you reinstate this policy, this rider may also be reinstated at the same time and under the terms of the "Reinstatement" provision of the policy. You must provide evidence satisfactory to us of the insurability of both the insured and the spouse.

(Continued on reverse side)

71ST-82  MIAC

## Rider: Spouse Term Insurance Benefit (Continued)

**General Provisions (Continued)**

**Age**—If the age of the spouse on the date of this rider is not correct as shown in the application, we will adjust the benefits under this rider. The adjusted benefits will be those that the cost paid for this rider would have provided at the correct age of the spouse.

---

**Termination**—This rider will end (1) on the Final Date or (2) before that date on the earliest of: (a) the end of the grace period of the policy; (b) the date of any conversion of this rider; or (c) immediately before the date of any supplementary paid-up policy issued after the insured dies.

You may end this rider on any monthly anniversary by sending us a written request and the policy. We will make the change and return the policy.

**Cost of Rider**—While this rider is in force, its cost will be a part of the monthly deduction from the accumulation fund. The monthly cost of this rider for each $1,000 of term insurance will be set by us, from time to time, based on the spouse's age, sex, and underwriting class. It will never be more than the maximum cost according to the table on the next page.

*Harry P. Kamen*

Harry P. Kamen
Secretary

## Rider: Spouse Term Insurance Benefit (Continued)

### Table of Guaranteed Maximum Costs
### (See "Cost of Rider" Provision)

| Spouse's Age at Beginning of Rider Year Male | Maximum Monthly Cost for Each $1,000 of Spouse Term Insurance Benefit | Spouse's Age at Beginning of Rider Year Female | Maximum Monthly Cost for Each $1,000 of Spouse Term Insurance Benefit |
|---|---|---|---|
| 18 | .217 | 18 | .200 |
| 19 | .222 | 19 | .207 |
| 20 | .227 | 20 | .215 |
| 21 | .230 | 21 | .220 |
| 22 | .234 | 22 | .225 |
| 23 | .237 | 23 | .229 |
| 24 | .239 | 24 | .232 |
| 25 | .242 | 25 | .235 |
| 26 | .245 | 26 | .238 |
| 27 | .249 | 27 | .241 |
| 28 | .254 | 28 | .244 |
| 29 | .259 | 29 | .247 |
| 30 | .264 | 30 | .251 |
| 31 | .270 | 31 | .256 |
| 32 | .276 | 32 | .262 |
| 33 | .283 | 33 | .268 |
| 34 | .292 | 34 | .276 |
| 35 | .304 | 35 | .283 |
| 36 | .319 | 36 | .292 |
| 37 | .335 | 37 | .304 |
| 38 | .358 | 38 | .318 |
| 39 | .380 | 39 | .335 |
| 40 | .407 | 40 | .355 |
| 41 | .437 | 41 | .380 |
| 42 | .469 | 42 | .408 |
| 43 | .504 | 43 | .439 |
| 44 | .543 | 44 | .473 |
| 45 | .587 | 45 | .510 |
| 46 | .634 | 46 | .550 |
| 47 | .687 | 47 | .595 |
| 48 | .746 | 48 | .643 |
| 49 | .811 | 49 | .696 |
| 50 | .881 | 50 | .754 |
| 51 | .958 | 51 | .818 |
| 52 | 1.041 | 52 | .888 |
| 53 | 1.131 | 53 | .964 |
| 54 | 1.229 | 54 | 1.045 |
| 55 | 1.334 | 55 | 1.131 |
| 56 | 1.449 | 56 | 1.222 |
| 57 | 1.574 | 57 | 1.319 |
| 58 | 1.708 | 58 | 1.420 |
| 59 | 1.852 | 59 | 1.528 |
| 60 | 2.007 | 60 | 1.639 |
| 61 | 2.180 | 61 | 1.770 |
| 62 | 2.356 | 62 | 1.890 |
| 63 | 2.541 | 63 | 2.009 |
| 64 | 2.735 | 64 | 2.123 |

71ST-82   MIAC   PR/A

**Metropolitan Insurance and Annuity Company**

### Rider: Children's Term Insurance Benefit

*This rider is a part of the policy if it is referred to on page 3.*

This rider provides level term insurance on each insured child payable to the child's beneficiary if an insured child dies before the end of coverage on that child.

**Insured Child**—An insured child is any child, stepchild or legally adopted child of the insured if such child is named in the application for this benefit and is less than 18 years old on the date of the application. An insured child is also any child who, after the date of the application and while less than 18 years old, becomes a child, stepchild or legally adopted child of the insured. However, no child will be covered under this rider while less than 14 days old.

**Date of Rider**—The date of this rider is the date of this policy.

**Final Date**—The Final Date of this rider is the policy anniversary on which the insured is age 65.

**Term Insurance Benefit**—After we receive proof that an insured child died before the end of coverage on that child, we will pay the term insurance benefit to the child's beneficiary. The amount of the term insurance benefit on each insured child is shown on page 3 under "Rider Insurance Benefit". The term insurance coverage on each insured child will end on the earliest of: (1) the insured child's 25th birthday; (2) the Final Date; or (3) the date of any new policy issued on the insured child under the Option for New Policy provision of this rider.

**Paid-Up Policy**—If the insured dies before the Final Date, any remaining insurance on each insured child will be continued for the balance of its term at no further cost. At our option, we or one of our affiliates will issue a supplementary paid-up policy to the owner of such insurance.

**Option for New Policy**—An insured child may obtain a new policy on his or her life at any time between the child's 22nd and 25th birthdays or, if earlier, on the Final Date. Evidence of insurability is not required. The amount of life insurance provided by the new policy may be up to 5 times the amount of term insurance on the insured child under this rider.

A written application for a new policy must be made by the insured child, who will be the owner of the new policy.

If the insured child dies within 31 days after the end of the coverage on his or her life and before a new policy has been applied for or has become effective, we will pay the amount of the term insurance on the insured child which had been in effect under the rider. This amount will be paid to the beneficiary of such term insurance.

For the new policy to take effect: (1) the insured child must be alive and this policy must be in force on the applicable option date; and (2) the full first premium for the new policy must be paid while the insured child is alive.

At our option, the new policy will be issued by us or one of our affiliates. It may be on any life or endowment plan (but not a term plan) in an amount which is regularly issued at the insured child's age on the date of the new policy. The new policy will be in the standard underwriting class. Any disability benefit, accidental death benefit, or other riders will be included in the new policy only if approved by the company issuing the policy.

The premium for the new policy will be based on the plan, amount of insurance, any riders included, the insured child's age and sex on the date of the new policy, and the standard underwriting class. Premium rates will be those in effect on the date of the new policy. The policy provisions will also be those in effect on the date of the new policy, including any war or aviation restrictions that are then regularly included in policies being issued.

**Effect on Policy Provisions**

**Ownership**—The owner of this policy is the owner of this rider while the insured is alive. The owner may, while an insured child is alive, exercise all the rights under this policy with respect to the insurance on that child; except that the right to obtain a new policy on an insured child may be exercised only by that child.

The owner will also own any supplementary paid-up policy issued under this rider. However, if the insured is the owner of this policy, each insured child will be the owner of any supplementary paid-up policy on his or her life issued under this rider after the insured dies.

**Beneficiary**—If no other beneficiary is named, the insured is the beneficiary of an insured child's insurance under this rider and the child's estate is the contingent beneficiary of that insurance. While an insured child is alive, you may change that child's beneficiary or contingent beneficiary.

**Incontestability**—We will not contest the validity of this rider with respect to coverage on any insured child after it has been in force for 2 years from the date of the rider if the insured and that insured child are alive at the end of the 2-year period. We will also not contest the validity of any supplementary paid-up policies issued after the insured dies.

(Continued on reverse side)

## Rider: Children's Term Insurance Benefit (Continued)

**Effect on Policy Provisions (Continued)**

**Reinstatement**—If you reinstate this policy, this rider may also be reinstated at the same time and under the terms of the reinstatement provision of the policy. You must provide evidence satisfactory to us of the insurability of any child who is to be insured on or within 14 days after the date of reinstatement. If satisfactory evidence is not provided for any child, the rider may be reinstated but with that child excluded from coverage until such evidence is provided.

**Termination**—This rider will end on the earliest of:

(1) the Final Date; (2) the end of the grace period of the policy; or (3) immediately before the date of any supplementary paid-up policy issued after the insured dies.

You may end this rider on any monthly anniversary by sending us a written request and the policy. We will make the change and return the policy.

**Cost of Rider**—While this rider is in force, its cost will be a part of the monthly deduction from the accumulation fund. The monthly cost of this rider for each $1,000 of term insurance will be set by us, from time to time. It will never be more than $.60 for each $1,000 of term insurance provided by this rider.

Harry P. Kamen
Harry P. Kamen
Secretary

71CT-82  MIAC

**Metropolitan Insurance and Annuity Company**

## Rider Regarding the Payment of Planned Premiums
## Under the Check-O-Matic Arrangement

*This rider is a part of the policy or contract to which it is attached.*

This rider provides that planned premiums for this policy will be payable each month under the Check-O-Matic arrangement. Under this arrangement, we are authorized to draw checks or share drafts, or to issue directions to debit a bank account, each month to pay the planned premium.

This rider will end if:

1. We do not receive the full amount of any check, share draft, or account debit charged by us;

2. The insured, the owner if other than the insured, or the account depositor sends us a written request to end the rider;

or

3. We send a written notice that the rider will end to the insured, the owner if other than the insured, and the account depositor.

If this rider ends while the policy is in force further planned premiums will be payable directly to us. Premiums may be paid at any time and in any amount subject to the terms of the policy.

Harry P. Kamen
Secretary

R.S. 826 MIAC   July 1983

**Metropolitan Insurance and Annuity Company**

### ENDORSEMENT

In order to ensure that the policy's death benefit is treated as life insurance proceeds under federal legislation, this policy is amended as of its date as follows.

I. The "Death Benefit" provision on page 5 is deleted and the following is substituted:

**Death Benefit**—The death benefit under this policy will be either (1) or (2) below, whichever is chosen and is in effect at the time of death, but in no event less than the minimum death benefit.

1. **Option A:** The Specified Face Amount of Insurance.

2. **Option B:** The Specified Face Amount of Insurance.

PLUS

The accumulation fund on the date of death.

**Minimum Death Benefit**—In no event will the death benefit be less than the amounts described below:

| Age on Date of Death | Minimum Death Benefit as a Percentage of the Accumulation Fund |
|---|---|
| 40 or younger | 250% |
| 41-45 | 243-215 |
| 46-50 | 209-185 |
| 51-55 | 178-150 |
| 56-60 | 146-130 |
| 61-65 | 128-120 |
| 66-70 | 119-115 |
| 71-75 | 113-105 |
| 76-90 | 105 |
| 91-95 | 104-100 |

The minimum death benefit will decrease uniformly within the age ranges shown.

II. The "Limits" provision on page 8 is amended by adding the following to the third paragraph:

When we set the maximum for total premiums paid in a policy year, we will take account of requirements in federal legislation. We will return to you any premium paid in a policy year which exceeds the maximum.

*Harry P. Kamen*
Harry P. Kamen
Secretary

R.S 926   MIAC   January 1985

## ✿✿MetLife®

Part A

2012265-**3**

Application for Term Conversion/Change of Personal Life Insurance Policy(ies) _____

854146 806 UA _____ issued by _Metropolitan Life Ins.c._

The age, premium and policy form will conform with any new issue date, and if the requested mode of payment is not available the next less frequent mode will be used.

1. ☐ Term Conversion(s)     COMPLETE IN FULL the New Policy I Section, and when necessary, the New Policy II
   ☐ Changes from Joint/Family plan     Section. If more new policies are involved, fully complete an additional Part A.

**NEW POLICY I**

To a Policy Issued by _____     Complete only if other than Company named above for original policy.

Name of Principal Insured(s) _____

Name of Insured Spouse/Insured Child(ren) _____

Plan _FPL Opt A_     Issue Date _Current Issue Date_

Amount $ _200,000_     Mode of Payment _C-o-m $90.00_

Optional Benefits/Riders and Other Requests _Annual Prm $1080.00_

**NEW POLICY II**

To a Policy Issued by _____     Complete only if other than Company named above for original policy.

Name of Principal Insured(s) _____

Name of Insured Spouse/Insured Child(ren) _____

Plan _____     Issue Date _____

Amount $ _____     Mode of Payment _____

Optional Benefits/Riders and Other Requests _____

2. ☒ Other Changes— Indicate the full name of the Principal Insured(s) and only the item(s) to be changed/added/canceled.

Name of Principal Insured(s) _Morris Joy_
Request—

The Insured is increasing his FPL from opt B to option A to $200,000 and adding another Child to his policy LaRhonda M. Joy

O106-5-A Printed in U.S.A.